In re MANUEL J. PORTUONDO CO.

(District Court, E. D. Pennsylvania. February 24, 1905.)

No. 1,815.

1. BANKRUPTCY—SALES—VENDOR'S LIEN—RETENTION OF PROPERTY.

Where claimant sold tobacco to a bankrupt, receiving the bankrupt's notes as conditional payment, and claimant retained possession of the tobacco in question until after the bankrupt's adjudication and until the notes matured and were unpaid, the title to the property so retained did not pass to the bankrupt's trustee, except subject to the claimant's existing lien for the unpaid portion of the price.

2. SAME—EXTENSION OF CREDIT—WAIVER OF LIEN.

Though claimant waived his right to a vendor's lien by extending credit to the bankrupt, such lien was immediately revived, on the bankrupt becoming insolvent, as to so much of the tobacco as remained in claimant's possession.

In Bankruptcy.

J. Martin Rommel, for claimant.
John Dickey, Jr., for trustee.

HOLLAND, District Judge. On September 5, 1903, Lewis Bremer's Sons sold the bankrupt 34 bales of tobacco, receiving from the bankrupt three notes, for $651.60 each, at four, five, and six months, and gave the following receipt:

"Philadelphia, September 5, 1903.

"M. J. Portuondo Company,

"Bought of Lewis Bremer's Sons, Importers & Packers of Leaf Tobacco.

"Terms 4, 5 & 6 Mos. revenue entry when delivered.

"34 bales Vega 22
  "4786-442-4344 at 45c.

"Received payment by notes, Nov. 9, 1903.          Lewis Bremer's Sons,

"Stored and insured under our policies.                  Per Hannis."

William H. G. Hannis transacted the business with the bankrupt for Bremer's Sons, and made the contract over the phone. The notes came by mail, and Hannis, upon receiving them, signed and returned the receipt, as above set forth, by mail to the bankrupt company. No other agreement was made in connection with the transaction, with the exception of the agreement that the duty was to be paid by the purchaser upon the withdrawal of these goods from the warehouse where they were stored. The tobacco had never been delivered to the bankrupt company, with the exception of 8 bales, and before the delivery of the remaining 26 the bankrupt presented its voluntary petition, on December 15, 1903, and was adjudicated a bankrupt on January 3, 1904. At this time the notes given, above referred to, were not yet due. The trustee in bankruptcy presented a petition requiring Bremer's Sons to deliver the remaining 26 bales to him, as property belonging to the bankrupt estate, after the notes were due and unpaid; and they deny his right to such delivery upon the ground that they have a vendor's lien upon the 26 bales not delivered, notwithstanding the receipts above given, and the fact that the notes were not due at the time the Portuondo Company was adjudicated a bankrupt.

There is a further reason urged by the bankrupt why Bremer's Sons should not be allowed to successfully interpose this right—for the reason that during the proceedings he claimed title as well as possession, and that the court had no jurisdiction, because of the fact that the goods were in the possession of an adverse claimant. This statement of claim was made by former counsel, but the referee finds that it was simply a statement of counsel, not acted upon by any of the parties to the proceedings.

It is further asserted that the vendor's lien was abandoned by Bremer's Sons by having set up a defense to the delivery of the 26 bales—that they intended to rescind the contract for fraud and misrepresentation in its inception. The referee, however, finds that Bremer's Sons did not urge this defense, nor did the trustee act upon the fact that it was suggested in an answer filed in a former proceeding. The referee also finds that the notes were not taken in full payment.

Under the facts hereinabove set forth, we are of the opinion that the referee is right in holding that the trustee is not entitled to the delivery of this property. It strikes us that it would be a most inequitable proceeding to require Bremer's Sons to deliver their goods, of which they have held possession from the time the contract was made to the present, to this trustee, in order that other creditors should be paid out of the proceeds, and they be compelled to present their overdue notes, and share pro rata with others in a fund which they furnished for distribution. We think the proposition is so clear that it is

unnecessary to cite authorities to support it. The following, however, may be mentioned as in point: White v. Welsh, 38 Pa. 396 (lower court, 399; Supreme Court, 420); Patten's Appeal, 45 Pa. 151, 84 Am. Dec. 479; Wanamaker v. Yerkes, 70 Pa. 443; McElwee et al. v. Metropolitan Lumber Co., 69 Fed. 302, 16 C. C. A. 232.

The notes not having been taken in full payment for the merchandise, and the vendor having held possession of the property to the present time, of course he retained his lien for the purchase money upon the tobacco not delivered. The facts do not show any circumstance that Bremer's Sons at any time either waived or lost this lien, and the title to the property could only pass to the trustee subject to the vendor's existing right of lien for the unpaid purchase money. But even if it be held that this was such an extension of credit to the purchaser as imposed upon the vendor a waiver of his lien, and the tobacco was permitted to remain in the possession of the vendor until the expiration of the credit, the vendor's lien, which was waived by the grant of the credit, revives upon the expiration of the term, even though the buyer may not be insolvent. Benjamin on Sales, § 1227, referred to in McElwee et al. v. Metropolitan Lumber Co., supra. And in that view, before the expiration of the credit, while the vendee is entitled to both possession and property, yet, if the actual possession is in the vendor, and the vendee becomes insolvent, he has a right to retain possession to secure the payment of the purchase money, and, if the merchandise is in transit, he has a right of stoppage before the vendee secures actual possession; and a vendor's right to retain possession against the trustee in bankruptcy of the vendee is the same under like conditions. In re Bearns, 2 Fed. Cas. 1190.

The trustee, however, claims that the filing of an involuntary petition is no evidence of insolvency, and that, while it may be that the right of a vendor's lien may revive as to the vendee after the expiration of a credit, yet, as to a trustee in bankruptcy of the vendee, it is not so, and, at the time the notes came due, as both the right of possession and the right of property had become vested in the trustee, the vendor, upon the trustee's application, must deliver the goods.

It was decided by Judge Choate, District Judge of the Southern District of New York, in Re Bearns, 2 Fed. Cas. 1190, that for goods arriving on a vessel for the vendor, which were sold, and upon their arrival were placed in a bonded warehouse selected by the vendee, in the name of the vendor, to be delivered as called for by the vendee, and a credit extended for two months by taking the vendee's notes for the purchase money, the right of stoppage in transitu exists in favor of the seller to prevent the assignee in bankruptcy of the vendee from obtaining possession of the merchandise after the note became due, where there had been a voluntary petition in bankruptcy filed, and an adjudication had, and the assignee appointed prior to the date upon which the period of credit expired; and it was held in White v. Welsh, supra, that:

"Judges do not ordinarily distinguish between the retainer of goods by the vendor, and their stoppage in transitu, on account of the insolvency of the vendee, because these terms refer to the same right, only at different stages of perfection and execution of the contract of sale. If a vendor has a right

of stoppage in transitu, a fortiori he has a right of retainer before any transit has commenced."

Exceptions to the referee's report dismissed, and the petition of the trustee to compel Bremer's Sons to deliver 26 bales of tobacco, as set forth, is refused.