## In re DARLINGTON CO.

(District Court, E. D. New York. May 12, 1908.)

**1. SALES — REMEDIES OF SELLER — STOPPAGE IN TRANSITU — BANKRUPTCY OF BUYER.**

The doctrine of stoppage in transitu, which was previously firmly established as a part of the general body of the law, is not abrogated by Bankr. Act, July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418); and the fact that a consignee has been adjudicated a bankrupt, and a receiver or trustee appointed for his estate, does not affect the right of the consignor to stop the goods in transit.

**2. SAME—DURATION AND TERMINATION OF TRANSIT.**

A bankrupt company ordered goods from petitioner, which were shipped, to be delivered to the bankrupt at the point of destination on payment of the freight charges. The goods arrived, but were not received by the bankrupt, which wrote petitioner desiring to cancel the order; but before any action had been taken, and while the goods were in storage in possession of the carrier, the adjudication in bankruptcy was made and a receiver appointed. The receiver took no action in respect to the goods until after petitioner had served notice of stoppage in transitu on the carrier and demanded their return. *Held* that, no delivery having been made, such notice was in time, and title to the property did not pass to the receiver or trustee in bankruptcy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 833.]

163 F.—25

In Bankruptcy.

Cornelius P. Kitchel, for petitioner.
James, Schell & Elkus and Robert P. Levis, for bankrupt.

CHATFIELD, District Judge. The Homer Laughlin China Company has filed a petition in this court for the modification of a general restraining order made herein September 30, 1907. The china company seeks to obtain from the Pennsylvania Railroad certain china now in storage in Brooklyn in a warehouse under the control of the railroad company. The petition is based upon an alleged stoppage in transitu, based upon the following facts:

The china company shipped from Ohio certain hogsheads of crockery; the shipments being completed upon the 31st of August, 1907. These goods all reached the freight station of the Pennsylvania Railroad in Brooklyn by September. 10, 1907, and were placed in a storage warehouse by the 18th of September, 1907. On September 21st the Darlington Company notified the china company that it did not wish the goods and asked the china company to send for them under a proposed cancellation of the order by which they had been purchased. On the 30th of September, 1907, a petition in bankruptcy was filed against the Darlington Company, and a receiver appointed, who immediately qualified and entered upon his duties. On the 7th of October the china company made a demand upon the railroad company by filing a notice for the return of the goods to the china company in Ohio. The china company served this notice upon learning of the bankruptcy of the Darlington Company, and the railroad company retained the goods, inasmuch as it had actual knowledge of the bankruptcy proceedings and the appointment of a receiver. The receiver made no demand upon the railroad company until some days later, inasmuch as he knew nothing at that time of the whereabouts of these goods.

The freight charges upon the goods have never been paid, and storage charges have accumulated for which the railroad company has a lien on the goods. The china company is attempting to enforce its claim of a complete stoppage in transitu, while the receiver in bankruptcy takes the position that, inasmuch as the filing of the petition and the order appointing him receiver were notice to the world (Muller v. Nugent, 184 U. S., at page 14, 22 Sup. Ct., at page 269, 46 L. Ed. 405), his title to property of the bankrupt, which subsequently will become vested in the trustee, as of the date of adjudication, is somewhat stronger than the title obtained by an assignee of an insolvent person.

It may be assumed from the facts shown that the consignee, the Darlington Company, was to pay the freight charges, and that the goods were to be delivered to the consignee, at Brooklyn, N. Y. Nevertheless the right of stoppage in transitu could be exercised, according to the almost uniform application of that doctrine, until some act by the consignee made the transportation company its agent and terminated the operation of carrying. It is contended that the appointment of a receiver, with the making of a general restraining order as to all

property of the bankrupt, is a sufficient exercise of the right to possession to give the creditors in bankruptcy and their trustee greater rights to the goods in the possession of the common carrier than the bankrupt himself, or his creditors, if no bankruptcy had intervened, would have had. The fact that the railroad company seems to have possessed actual knowledge of the appointment of the receiver makes this argument more plausible, and inasmuch as refusal to deliver the goods to the consignor was because of this knowledge it would seem that the railroad company feared lest the receiver have the right to hold them responsible for a delivery of the goods to the consignor.

The doctrine of stoppage in transitu is of itself more or less anomalous. If a purchaser ships goods at a price f. o. b. at the point of shipment, and the consignee is liable at the point of delivery for both carriage and storage charges, the exact time at which title passes to the consignee, so that the rights of his creditors may intervene, is susceptible of different opinions. But the courts have almost uniformly held that, until delivery was made in some manner at the destination, the consignor might stop the goods and direct their return to himself, provided insolvency actually exists, and provided no demand has been made upon the carrier by the consignee sufficient to be a substitute for delivery or the exercise of the rights of ownership. It would follow from this last proviso that, if a receiver in bankruptcy demands from a common carrier goods consigned to the bankrupt before the service of any notice of stoppage in transitu, no doubt could arise, and the demand of the receiver, coupled with the authority vested in him by his appointment, should be sufficient to terminate all rights of the consignor, if he has not already succeeded in stopping the goods in transit.

But the present question is more difficult. Does the title of the receiver attach, and can the trustee, subsequently elected, benefit from the appointment of a receiver, unless the receiver acts and affirmatively exercises the authority given him by the court? The receiver is appointed to take and hold. He has no title, except as he exercises the authority to receive. The restraining order, forbidding any one from interfering with the possession of the receiver or from concealing or keeping out of the possession of the receiver any property of the bankrupt, is broad enough to cover only property of which the bankrupt himself could take possession; and it cannot be said that the receiver, until he exercises his authority, can be held to have terminated the right of the consignor to stop his goods in transit, until the receiver affirmatively demands from the carrier the possession of the goods, or notifies it that he elects or intends to make such a demand. It would seem to do utter violence to the principles of the right of stoppage in transitu to uphold a receiver in such contention. In the present case the railroad company may have known of the bankruptcy and of the receivership; but until the receiver determined to demand possession of the goods he was standing merely in the shoes of the bankrupt, but armed as an officer of the court, with authority to do whatever the court might consider the bankrupt had a right to do, or to take possession of whatever property belonged to the bankrupt. This would not interfere with the exercise by creditors of any

rights which they had, until those rights were terminated by the receiver or by the order of court; and under the condition of the law with reference to stoppage in transitu the goods in question were not the property of the bankrupt, beyond the reach of the right of stoppage, until the receiver or some creditor demanded of the company possession or control of the goods.

The right of stoppage in transitu has been recognized as against a receiver in bankruptcy in the case of In re Burke & Co. (D. C.) 15 Am. Bankr. Rep. 495, 140 Fed. 971; and the application of the doctrine is approved in the case of In re Portuondo (D. C.) 14 Am. Bankr. Rep. 337, 135 Fed. 592. Similarly, under the old bankruptcy statute, in the case of In re Bearns, Fed. Cas. No. 1,190, the courts in a bankruptcy proceeding approved the right of a creditor to stop goods in the hands of a carrier. This anomalous doctrine, which seems to have originally grown up in equity, upon the theory that a creditor who was vigilant and succeeded in getting back his goods before they reached the possession of the bankrupt, had a stronger equity than the creditors who knew nothing whatever about this particular sale, has for more than 150 years been applied by courts of law, until at the present time it is said that the doctrine is stronger in law than in equity. 26 Amer. & Eng. Ency. of Law, pages 1080, 1081. A reason for this can be readily seen, in that a principle applied as a principle of law is less elastic than when applied in a court of equity, which is balancing and considering the strength of different claims, upon the basis of justice between the parties.

The doctrine of stoppage in transitu can only be invoked where insolvency exists, and except for the provisions of the bankruptcy statutes of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517) and 1898 (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) the administration of insolvent estates in the United States has been under the various assignment acts of the different states. Such laws relating to assignments and the general doctrines of insolvency recognize preferences and preferential payments. But both the bankruptcy act of 1867 and that of 1898 make preferential payments within a certain period voidable, and provide against the recognition of preferences in the administration of the bankrupt estate. The theory of the present bankruptcy law would seem to be utterly hostile to the idea of returning to a creditor goods as to which title, but not actual possession, had passed to the bankrupt, and thus securing to the creditor who stops the goods payment in full, as against partial dividends to other creditors. But, at the time the bankruptcy law of 1867 and the bankruptcy law of 1898 were passed, the doctrine of stoppage in transitu was well known in the courts and in the general body of the law. The application of the doctrine of stoppage in transitu, since the passage of the bankruptcy act, and its recognition by the courts, indicate that it cannot be inferred from the bankruptcy statute that a principle of law, so recognized by the courts as to have become a legal right, was wiped out and intended to be disregarded, when no express evidence of that intent was set forth in the text of the law. For the sake of consistency, and in order to carry out the principle of the bankruptcy statute, that the filing of a petition and the appointment

of a receiver is notice to the world, and creates an inchoate title which cannot be disregarded by those who have in their possession any part of the bankrupt estate, as indicated in the Muller Case, supra, the doctrine of stoppage in transitu might have been excluded, if it had seemed wise to those framing the law so to do. But, as has been said, the trend of decision and the language of the statutes seem to indicate that no change in the doctrine of stoppage in transitu was made by either of the bankruptcy acts of the United States, and the present case must depend upon the determination of the issue involved according to the principle of that doctrine as set forth by decisions. That phase of the question has been already considered, and a conclusion reached in favor of the shipper.

The motion will therefore be granted.