MORGAN, Appellant, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Respondent.

*February 5—March 5, 1918.*

*Carriers: Stoppage in transitu: Rights and liabilities of carrier: Conversion: Goods taken under legal process: Notice to owner: Bankruptcy of consignee: Summary order to take property: Jurisdiction of bankruptcy court: Collateral attack: Duty as to protecting shipper's interest: Assumption of responsibility: Estoppel.*

1. Upon the exercise of the right of stoppage *in transitu* the carrier must, at its peril, deliver the goods to the person entitled to them. If in doubt, it should insist upon full investigation and may retain possession until it is satisfied; or, if both vendor and vendee are demanding the goods and threatening suit therefor, it may by interpleader compel them to settle the question between themselves.

2. Where the vendor of lumber shipped it to Chicago but, upon learning of the vendee's bankruptcy, duly stopped it in transit while it was still in Wisconsin, the carrier did not, by afterwards transferring the lumber to its station yards in Chicago, convert it or become liable to the vendor for its value, the vendor not being injured by such transfer, since the carrier did not thereby

part with possession of the lumber or render itself unable to comply with its duty to the vendor.

3. The fact, in such case, that after reaching Chicago the lumber was, pursuant to an order of the bankruptcy court, delivered to the receiver of the vendee, did not render the transfer to Chicago a conversion, since the same court might have compelled such delivery if the lumber had remained at the place of stoppage.

4. A carrier cannot be held responsible for goods taken from its custody by valid legal process, provided it gives the owner prompt notice of the suit so that he may have an opportunity to protect his interest.

5. Where the vendor of lumber stopped it in transit but, pursuant to a summary, *ex parte* order of a bankruptcy court, the carrier thereafter delivered it to the vendee's receiver in bankruptcy, such order constituted "legal process, fair on its face," relieving the carrier from liability to the vendor if the carrier promptly notified him of such action.

6. The jurisdiction of the bankruptcy court to make such summary order cannot be questioned collaterally in an action in a state court by the vendor against the carrier to recover the value of the lumber.

7. Whether a bankruptcy court has jurisdiction to proceed in a summary manner to vest its receiver with possession of property claimed to belong to the bankrupt's estate depends upon the facts disclosed by the record from time to time, and, while it may have jurisdiction to institute such proceedings, it may be ousted of such jurisdiction by a presentation of facts showing that the title to such property is claimed by another, in which case such other is entitled to have his right to the possession determined in a plenary suit.

8. Even if the order of the bankruptcy court was not "legal process, fair on its face," the delivery of the lumber to the receiver did not render the carrier liable to the vendor, since the receiver's claim of the right of possession raised a controversy which the carrier had no power to determine, and the property was not by such delivery lost to the vendor, but was turned over to a proper tribunal in which the vendor might assert his claim.

9. The carrier was not bound, in such case, to go into the bankruptcy court and establish the vendor's right to the lumber, but only to notify the vendor promptly of what had been done; and the vendor slept upon his rights by not appearing seasonably in that court to establish his claim.

10. After issue was joined in this action by the vendor against the carrier for the value of the lumber, in correspondence between

the attorneys of the respective parties it was asked on behalf of the carrier whether the vendor would settle for a certain sum if the carrier could obtain a refund of that amount from the bankruptcy court, and the reply was that the vendor would accept that amount but that, as no definite offer of settlement had been made, he would notice this action for trial and proceed as if there had been no negotiations. *Held*, that the carrier did not thereby assume responsibility for recovering the value of the lumber from the bankrupt estate, and since there was nothing to indicate that the vendor had intended to present a claim in the bankruptcy court or that his conduct was in any way influenced by the correspondence, the carrier was not estopped from contending that the vendor should have sought a remedy in said court.

APPEAL from a judgment of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge. *Affirmed.*

The plaintiff is a manufacturer of lumber doing business at Morgan Siding, Wisconsin, and the Esterbrook-Skeele Lumber Company is a corporation engaged in the lumber business with offices in the city of Chicago and state of Illinois. Prior to the 4th day of April, 1914, the plaintiff agreed to sell to the Esterbrook-Skeele Lumber Company a considerable quantity of lumber, to be loaded on cars at or near Morgan Siding, Shawano county, Wisconsin, on the line of the Wisconsin & Northern Railroad Company. Said lumber was thereafter loaded and billed by the plaintiff, from time to time, as directed by said lumber company. On or about the 4th day of April, 1914, at the request of said lumber company, the plaintiff, pursuant to and under said contract, loaded two cars of lumber for shipment to the said lumber company. Said cars were accepted for shipment by the Wisconsin & Northern Railroad Company at Van Ostrand, Wisconsin, and delivered to the defendant railroad company at Shawano, Wisconsin, as connecting carrier, in the usual course of transportation, for delivery to said lumber company at Chicago, Illinois. Upon the bill of lading the lumber company appeared as shipper as well as consignee, the plaintiff causing said bill of lading to be issued in

such form pursuant to the request of the lumber company. At the time of shipment said lumber had not been paid for, either in whole or in part, and both railroad companies knew that plaintiff was the manufacturer and vendor of the lumber and that he delivered the same on board said cars for shipment and caused the bills of lading to be issued as aforesaid,—all under some contract or understanding with said lumber company, the terms of which contract or understanding were unknown to said railroad companies. While said cars were *en route* and in the possession of the defendant as common carrier, and within the state of Wisconsin, the lumber company, on the 14th day of April, 1914, upon its own petition, was by the district court of the United States for the Northern district of Illinois duly adjudged a bankrupt. On the same day, upon being advised of said bankruptcy proceedings, and while said lumber was in the possession of the defendant at Butler, Wisconsin, the plaintiff exercised his right of stoppage *in transitu* in ample manner and form. The cars were held at Butler, Wisconsin, for further disposition orders. On the 20th day of April plaintiff wrote the claim agent of the defendant advising it to take disposition of the cars from Upham & Agler Lumber Company. On the 24th day of April the Upham & Agler Company wrote defendant directing it to reconsign said cars to certain named parties at Milwaukee, Wisconsin, but before receiving that letter the defendant moved said cars to Chicago, and on April 27th wrote plaintiff as follows:

"This is to advise you that we have ordered these cars to Chicago, where they will be held. The Esterbrook-Skeele Lumber Company claim ownership, and I wish you would kindly advise at once of the proof of ownership you can show for the two cars in question."

On April 28th, and before receipt of the letter of the 27th, plaintiff delivered a communication to the defendant's agent at Shawano, Wisconsin, making complaint because the cars

were not delivered to the parties at Milwaukee, and notifying the defendant that it would be held liable for the value of the lumber. On April 29th attorneys for plaintiff replied to the letter of the 27th inclosing a copy of the letter delivered to the agent at Shawano on the 28th, and further stating:

"As you have ordered these cars to Chicago, after instructions from *O. E. Morgan* to deliver them to his customers at Milwaukee, there is nothing for us to do except to hold you for the value of these cars. We shall accordingly bring suit against you for their value. You should at least have extended to us the courtesy of holding these cars in Wisconsin pending further advice from *Mr. Morgan.*"

On the 27th of April defendant caused the cars to be shipped from Butler, Wisconsin, to its Mayfair station yards at the city of Chicago to be there held for further orders.

Upon the arrival of said lumber in Chicago the receiver in bankruptcy made demand upon the defendant for the possession thereof. The defendant refused to deliver same to said receiver. Thereupon, and on the 28th day of April, the United States district court for the Northern district of Illinois (the bankruptcy court) made and entered an *ex parte* order requiring the defendant to deliver said lumber to the receiver in bankruptcy. Pursuant to said order the lumber was delivered to the receiver. The plaintiff thereupon brought this action to recover the value of the lumber, and from a judgment in favor of the defendant plaintiff appealed.

For the appellant there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *Albert S. Larson.*

*R. N. Van Doren* of Milwaukee, for the respondent.

OWEN, J. Conceding plaintiff's right of stoppage *in transitu,* defendant's liability must be predicated on some

breach of duty that it owed the plaintiff. This is conceded by the plaintiff, who asserts that the shifting of the lumber from Butler to Chicago constituted a conversion thereof, and that if such transfer did not constitute conversion then the defendant converted it when, in the face of the claim of title thereto by the plaintiff, it delivered the lumber to the receiver in bankruptcy pursuant to the order of the United States district court for the Northern district of Illinois.

Upon the exercise of the right of stoppage *in transitu* the carrier thereafter acts at its peril in its disposition of the goods stopped. It must deliver the goods to the person entitled to them. If it wrongfully deliver either to the vendor or the consignee it will be liable in damages to the other. If the carrier is in doubt as to whom it should deliver the goods to it is its right, as well as its duty, to insist upon full investigation of all the facts that go to the right of the seller to stop the goods, and it may retain the property in its possession until it is satisfied. 2 Michie, Carriers, §§ 1713–1719; Hutchinson, Carriers, § 421; Van Zile, Bailments & Carriers, § 592. Should the carrier be unable to determine who is entitled to delivery, and both the vendor and the vendee are demanding the goods and threatening to bring actions against it to recover, then the carrier would no doubt have the right to file a bill of interpleader in an equity court and compel the parties to settle the question between themselves. Van Zile, Bailments & Carriers, § 592; Hutchinson, Carriers, § 422. It has been said that after notice of stoppage the carrier occupies the position of stakeholder between the parties. 2 Rorer, Railroads, p. 1339.

With these principles in mind we proceed to examine the situation to ascertain if the carrier breached its duty to the plaintiff in any respect. As already stated, plaintiff claims that the transfer of the lumber from Butler to Chicago constituted a conversion thereof on the part of the railroad com-

pany.   We fail to appreciate the force of the logic support-
ing this conclusion.   By such transfer the carrier did not
part with the possession or control of the lumber or place it
beyond its power to comply with its duty to the plaintiff.
It could as well have made delivery, pursuant to plaintiff's
directions, from Chicago as from Butler.   If defendant
eventually failed or refused to make disposition as directed
by plaintiff, the fact that the lumber was ·held in Chicago
instead of Butler would in no manner affect plaintiff's rights.
Neither was plaintiff prejudiced by such removal so far as
the action of the bankruptcy court is concerned.   It is con-
ceded that the *Chicago & Northwestern Railway Company*
had officers and agents domiciled at Chicago upon whom serv-
ice of process issued by the bankruptcy court easily could
have been made.   In other words, it was an easy matter for
the bankruptcy court to acquire personal jurisdiction of the
defendant railroad company, and by so doing it could have
compelled the delivery of the lumber, wherever it might have
been physically located, to the receiver in bankruptcy.   What
subsequently happened could have occurred as easily and
with the same consequences if the lumber had remained at
Butler.   We are not only unable to construe the transfer of
the lumber from Butler to Chicago as an act of conversion,
but we fail to perceive how plaintiff was injuriously affected
thereby.

We come now to the question of whether the railroad com-
pany was justified in turning the lumber over to the receiver
under the order of the bankruptcy court.   The carrier can-
not be held responsible for goods taken from its custody by
valid legal process provided it gives the owner prompt notice
of the suit so that he may have an opportunity to protect his
interest.   If the carrier gives such notice and the consignor
fails to appear or fails in his defense and the property is
seized, held, or sold under judicial process, the carrier can-

not thereafter be held responsible for yielding to what must then be treated as *vis major*.    *Wells Fargo & Co. Express v. Ford,* 238 U. S. 503, 35 Sup. Ct. 864; 10 Corp. Jur. 280.

Plaintiff concedes the above principle, but claims that the order of the bankruptcy court does not constitute "legal process, fair on its face." This raises a question calling for careful consideration.

"There are two classes of cases arising under the act of 1898 [federal bankruptcy act] and controlled by different principles. The first class is where there is a claim of adverse title to property of the bankrupt, based upon a transfer antedating the bankruptcy. The other class is where there is no claim of adverse title based on any transfer prior to the bankruptcy, but where the property is in the physical possession of a third party or of an agent of the bankrupt, or of an officer of a bankrupt corporation, who refuses to deliver it to the trustee in bankruptcy. In the former class of cases a plenary suit must be brought, either at law or in equity, by the trustee, in which the adverse claim of title can be tried and adjudicated. In the latter class it is not necessary to bring a plenary suit, but the bankruptcy court may act summarily and may make an order in a summary proceeding for the delivery of the property to the trustee, without the formality of a formal litigation." *Babbitt v. Dutcher,* 216 U. S. 102, 30 Sup. Ct. 372.

It is contended by the plaintiff that, under the circumstances, the bankruptcy court was without jurisdiction to proceed in a summary way to vest the receiver with the possession of the lumber; that, the bankruptcy court being without jurisdiction to act summarily, its order was wholly void and affords no protection to the railroad company for delivering the lumber to the receiver. The question naturally arises, By whom and how and when is it to be determined whether the bankruptcy court had jurisdiction to make the order upon which the defendant relies? Manifestly it is a question calling for judicial determination. It

cannot be determined by the person to whom the order is
addressed. It must be determined by the court issuing the
order, and it is reasonable to conclude that the act of issuing
the order is tantamount to a determination that it had juris-
diction so to do. Obviously such determination must be
based upon the evidence then before the court, and it cannot
be presumed in an action such as this, where the validity of
that order is collaterally questioned, that the court did not
have before it, upon the face of the record, facts sufficient to
confer jurisdiction—if indeed that question can be consid-
ered at all in a collateral attack upon the validity of the
order.

Plaintiff's attorney contends very forcibly that, under the
facts existing, the bankruptcy court did not have jurisdiction
to make the order in question. The trouble is, his conten-
tion is not made in the proper forum. We are quite con-
vinced that if he had made his contention in the bankruptcy
court that court would have released its jurisdiction. That
was the proper place, and the only place, to raise the ques-
tion. It might have well happened that at the time of the
issuance of the order the court, upon the facts then before it,
had jurisdiction to make the order, of which jurisdiction it
might have been ousted by the further presentation of facts
relating to the title of the lumber which plaintiff could have
brought to the attention of the court. Thus, in *In re Blum*,
202 Fed. 883, decided by the circuit court of appeals for the
Seventh circuit, it is said by KOHLSAAT, J.:

"The only question presented is whether petitioner's an-
swer sets up an adverse claim within the meaning of the
bankruptcy act. If it does, then petitioner is entitled to
have it adjudicated in a plenary suit. . . . On a petition to
review, this court can pass only upon errors of law. We are
therefore limited to the inquiry as to whether the conclusions
of law of the referee and the district court are sustained by
their conclusions of fact, or whether, when petitioner set up
in her answer that she was in possession of and claimed as

her own the said money, she did not in fact state a case which *ousted the summary jurisdiction of the court."*

In concluding a very able opinion upon the questions presented the learned judge said:

"We believe the true rule to be . . . that where a party in possession sets out in his answer facts which, if true, would constitute an adverse title, the court may not in a summary proceeding, and against his protest, dispose of his rights in property. It therefore follows in the present case that petitioner was entitled to have her claim adjudicated in a plenary suit. The decree of the district court must be reversed, with direction to vacate the same and *release further jurisdiction of the summary proceeding."*

The clear inference from this decision is, that whether the bankruptcy court had jurisdiction to proceed in a summary manner to vest its receiver with possession of property claimed to belong to the bankrupt's estate depends upon the facts disclosed by the record from time to time, and that while it may have jurisdiction to institute such plenary proceedings, it may be ousted of such jurisdiction by a presentation of facts showing that the title to such property is claimed by another, in which case such other is entitled to have his right to the possession thereof determined in a plenary suit.

We are of the opinion that the order made by the bankruptcy court, under which the railroad company delivered the lumber in question to the receiver in bankruptcy, must take rank as "legal process, fair on its face;" that the railroad company was justified in making the delivery of the lumber to the receiver in bankruptcy in obedience to such order; that the only duty it owed the plaintiff was to notify him of such action, which it did, and that, as a consequence, the defendant is not liable to the plaintiff in this action.

We think, however, that if the order in bankruptcy could not be classed as "legal process, fair on its face," the same conclusion with reference to the liability of the railroad com-

pany would have to be reached, for the reason that the action of the railroad company in delivering the property to the receiver in bankruptcy was *damnum absque injuria* so far as the plaintiff is concerned.   It was apparent that the receiver in bankruptcy claimed the right of possession of the lumber. This claim raised a controversy which the railroad company had no power to determine, and no principle of justice required it to determine at its peril whether the plaintiff or the receiver in bankruptcy was entitled to the possession thereof.   Under such circumstances, as above indicated, it was entitled to have the controversy between plaintiff and the receiver in bankruptcy settled by some court of competent jurisdiction.   The bankruptcy court was such a court, and the effect of turning the lumber over to the officer of that court was to substitute a stakeholder with power to determine authoritatively the dispute between the parties—the bankruptcy court—for a stakeholder who did not have such power—the railroad company.   The property was not lost to the plaintiff by delivery to the receiver in bankruptcy. Bankruptcy courts generously recognize the right of stoppage *in transitu* (*In re Manuel J. Portuondo Co.* 135 Fed. 592; *Pridmore v. Puffer Mfg. Co.* 163 Fed. 496; *In re Allen,* 178 Fed. 879; *In re White,* 205 Fed. 393) ; and if he was legally entitled to the lumber the bankruptcy court was a very proper tribunal in which to establish such claim.

Furthermore, we do not think any principle of justice or equity required the railroad company to go into the bankruptcy court and establish plaintiff's right to the lumber. The railroad company did not have the facts at hand to make proper proof of plaintiff's title and, at the best, it could do no more than to advise the court of the claims made by plaintiff in this respect.   The law contemplates that such contests shall be made by the vendor himself, and to secure him in this right it lays upon the carrier the duty of promptly notifying him of the institution and pendency of proceedings

adverse to his claim of title. We think it plain, in any view that may be taken of this case, that the plaintiff slept upon his rights in not appearing seasonably in the bankruptcy court and there establishing his title to and right of possession of the lumber in question.

There is another contention made by the plaintiff which remains to be disposed of. Plaintiff contends that the defendant assumed responsibility for recovering the value of the property from the receiver in bankruptcy and is, therefore, estopped from contending that plaintiff should have sought that remedy. This contention is based upon correspondence occurring between the attorneys for the plaintiff and the railroad company. On September 24, 1914, the attorney for the railroad company wrote plaintiff's attorneys asking what plaintiff would take to settle the case, stating,

"It may be that I could make some progress with an application to the federal court for relief provided. I could make settlement with you. In view of the fact that you have taken issue with the facts set forth in my answer, the trial of the case may be somewhat expensive, and I think you should consider the possibility of our having a defense and be willing to make us a reasonable proposition which might enable us to work out a settlement of the matter."

In reply to this letter plaintiff's attorneys wrote the attorney for the defendant on September 25th, reviewing the situation somewhat, concluding by saying,

"If you will write us offering to pay $395.66 in payment of the claim of *Mr. Morgan* we will submit it to him with recommendation that he accept it. If he shall refuse to accept it we agree that the offer shall be eliminated from the case."

On September 26th the attorney for the railroad company acknowledged receipt of this letter and said:

"I am going to do everything I can to get bankruptcy estate to refund us $395.66. I will proceed at once along this line. I wish, however, you would get definite authority

from *Mr. Morgan* to settle the case for this amount. Your letter leaves it in such shape that I could not make definite propositions to the federal court, although I do not doubt but what your client would accept your recommendation. Anything you will offer or promise to do in this matter will be treated as confidential and will not prejudice you in case we fall down. I wish, therefore, you would wire me that you have authority to settle for $395.66. I think with a little co-operation we will be able to dispose of this matter without any litigation."

On September 28th plaintiff's attorneys replied to this letter as follows:

"We have your letter of the 26th, and after getting in touch with *Mr. Morgan* obtained his consent to settle for $395.66, and we have just wired you as follows: 'Have authority *Morgan* to settle for $395.66.' As your letter is not a definite offer of settlement on this basis, we will serve notice of trial on you, as we desire to get the case on the November calendar for trial in the event that you should not conclude to settle on the basis indicated."

This correspondence was had after issue was joined in the case and as the time for trial was approaching. It does not appear that this correspondence modified plaintiff's plans in the least. In the first place there is nothing to indicate that the plaintiff had any intention whatever of presenting a claim in the bankruptcy court. The thought that the bankruptcy court might refund the amount secured upon a sale of the lumber seems to have occurred to the attorney for the railroad company, and in the hope that, by pressing a claim in that court, the trial of this case might be avoided, he entered upon this correspondence with a view of securing an offer of settlement for $395.66, the amount realized on the sale of the lumber, from the plaintiff. The only thing plaintiff did was to offer to settle the case for $395.66 as appears by the letter of September 28th. It was thoroughly understood that the railroad company had not offered to pay $395.66 in settlement, and because it had not done so plaint-

iff proceeded with the service of notice of trial. It is well settled that parties to litigation may negotiate for a settlement of their differences without prejudice to their rights. The essence of this correspondence was: the railroad company made inquiry whether *Morgan* would settle for $395.66 if the railroad company could secure a refund of that amount from the bankruptcy court. The plaintiff said that he would accept such amount in settlement, but, as the railroad company had not made a definite offer of settlement, he would serve notice of trial and proceed as though no negotiations had been entered upon. It very clearly appears that plaintiff's conduct was in no manner influenced by this correspondence. He had determined to hold the railroad company, and there is nothing to indicate any purpose on the part of the plaintiff to press his claim in the bankruptcy court. We think the decision of the trial court was right, and that the judgment appealed from must be affirmed.

*By the Court.*—Judgment affirmed.