## UNITED STATES v. HART et al.

### (District Court, N. D. New York. June 16, 1914.)

SEARCHES AND SEIZURES (§ 7*) — PROCUREMENT OF TESTIMONY — OFFICERS — DUTY TO SURRENDER.

> Where defendant H., on ascertaining that he was suspected of having conspired to commit a crime against the United States and of using the mails to defraud, voluntarily sought a conference with the United States attorney, and, in the course of conferences presented, without compulsion, certain letters, telegrams, and other papers concerning his connection with the alleged offense and delivered them to the United States attorney without condition as to their use, and defendant was afterwards provided with the facts in the copies for his use, there was no illegal seizure by the officers so as to require the court to direct a surrender of the papers to H. prior to the trial.

> [Ed. Note.—For other cases, see Searches and Seizures, Cent. Dig. § 5; Dec. Dig. § 7.*]

Max M. Hart and others were indicted for conspiracy to commit a crime against the United States·and for misuse of the mails in aid of a scheme to defraud. On an order to show cause why John H. Gleason, United States attorney for the Northern district of New York, should not be required and directed to deliver to defendant Max M. Hart certain documents relating to his transactions with the other defendants, etc., delivered by Hart to Gleason prior to indictment. Denied.

Henry A. Wise, of New York City, and Chas. E. Cooney, of Syracuse, N. Y., for defendant Hart.

John H. Gleason, U. S. Atty., of Albany, N. Y., and Thos. H. Dowd, Asst. U. S. Atty., of Cortland, N. Y.

RAY, District Judge. The defendant Max M. Hart has been jointly indicted with the other defendants by the United States grand jury of the Northern district of New York, for conspiring to commit a crime against the United States, overt acts being charged (see section 37 of the Criminal Code of the United States, Act March 4, 1909, c. 321, 35 Stat. 1096 [U. S. Comp. St. Supp. 1911, p. 1600]), and in the same indictment, in several counts the defendants are indicted for using the mails to execute or aid in executing a scheme to defraud. See section 215 of said Code. All the counts in the indictment relate to offenses alleged to have been committed in executing a general

scheme to defraud or obtain money and property by means of false and fraudulent statements and representations, and the offenses charged are closely connected. The Oneida Milling Company is a bankrupt, and while examinations as to its affairs were being conducted before the referee, to whom the matter had been referred, it became apparent, it is claimed, that a crime had been committed, possibly by Max M. Hart and others, punishable under the laws of the United States. The matter was brought to the attention of the United States attorney for the Northern district of New York, who set on foot an investigation before the grand jury of said district at Syracuse, N. Y. The defendant Hart was not subpœnaed before the grand jury or required to produce any books, papers, or documents, or any of the papers, etc., in question here. As to when and the circumstances under which the United States attorney became possessed of such papers, etc., the defendant himself says in the moving papers:

"That prior to the return of said indictment the aforesaid grand jury was in session at the city of Syracuse in the county of Onondaga in the Northern district of New York during a considerable part of the month of April, in the year 1914, and while said grand jury was so in session, deponent was informed that said grand jurors were inquiring into certain acts and things in relation to the affairs of the Oneida Milling Corporation, a corporation owning and operating a mill at the city of Oneida in the county of Madison in the state of New York, as to which deponent was said to have had something to do, and desiring that said grand jurors should not be misled or deceived as to deponent's relation to the affairs of such corporation, deponent proceeded from the city of New York, in the state of New York to the city of Syracuse aforesaid, and on or about the 18th day of April, 1914, was presented and introduced to John H. Gleason, Esq., the attorney of the United States in and for the Northern district of New York, and then and there informed said John H. Gleason that he was ready and willing to fully and freely disclose to said Gleason any and every act on his part in relation to or in any way connected with the affairs of the Oneida Milling Corporation; that thereupon said Gleason made an appointment for a conference with deponent, and on the same day deponent met said Gleason in a private room at the Century Club in the city of Syracuse aforesaid; that for a period of from two to three hours deponent and said Gleason were engaged in such conference, during which time deponent freely disclosed to said Gleason all of deponent's knowledge as to the affairs of said Oneida Milling Corporation, but at that time deponent did not have with him any books, papers, letters, telegrams, checks, or other documents relating to the transactions about which such conference had to do; that said conference terminated with the understanding that deponent and said Gleason were to meet again the day following. The following day deponent met said Gleason in the Federal Building in the city of Syracuse aforesaid, and said Gleason then and there stated to deponent that he desired to see and examine deponent's books, papers, and documents relating to the transactions about which they had conversed the night before. That thereupon, and at the request of said Gleason, deponent proceeded to the city of New York, went to his office and took from his files a large number of original letters, carbon copies of letters, original telegrams, carbon copies of telegrams, canceled checks, vouchers, promissory notes, statements of account, and various other papers and documents relating to his transactions with the defendants Andrew S. Work, Frank W. Fowler, and Adolph E. Wupperman, and to his transactions with the Oneida Milling Corporation and various other companies, corporations, banking institutions and individuals. That according to deponent's best recollection and belief there were about 400 such documents and papers; that deponent took the aforesaid papers and proceeded to the city of Syracuse, where, according to his best recollection, he arrived on the 24th day of April, 1914. That in the evening of

said 24th day of April, deponent, by appointment, met said Gleason at the aforesaid Century Club, and in a private room thereof disclosed to said Gleason the aforesaid papers and documents brought by deponent from New York as aforesaid. That then and there deponent permitted said Gleason to read certain of said documents."

He then proceeds to state, in effect, that Mr. Gleason promised to return said papers and documents but has not, and, on information and belief that the United States attorney intends to use same on the trial of the indictment against him and the other defendants found at the said term of this court. He alleges two grounds on which he claims such papers, etc., should be returned to him, viz.: (1) That he requires same for the preparation of his defense on the trial of such indictment; and (2) that same were illegally seized by said United States attorney in violation of the rights secured to him by fourth and fifth amendments to the Constitution of the United States. The fourth amendment reads as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The fifth, so far as pertinent, reads as follows:

"No person * * * shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law."

Here, on the statement of Hart himself, there has been no search and no seizure, unless it be that the retention of these papers and documents constitute a "seizure," and an unreasonable seizure within the meaning of the Constitution. There has been no process of law resorted to by the United States attorney to gain possession of these papers.

As to the circumstances under which Mr. Gleason, United States attorney, came into possession of these papers, etc., Mr. Gleason, and his assistant, Thos. H. Dowd, and Mr. Dolson, clerk and stenographer for the United States attorney, say in substance that Hart, hearing of the pendency of the investigation being conducted before the grand jury, came voluntarily from the city of New York to Syracuse, employed counsel, and with such counsel called upon the United States attorney and in the presence of his said counsel, the United States attorney and his assistant and clerk voluntarily made a statement as to his connection with the affairs under investigation, and then, in substance, volunteered to go to New York, and the next day or the day after produce all books, papers, and writings in his possession, or that he could obtain which had to do with or in any wise related to the business of the Oneida Milling Company and the financial relations of Hart to said company and his dealings with the company; that thereafter said Hart again appeared and was invited to the room of Mr. Dowd, assistant United States attorney, where Hart voluntarily produced all the papers and documents in question here, and submitted them to the examination of Mr. Gleason and his assistant, and at a late

214 F.—42

hour left them in Mr. Dowd's room, the examination not having been completed. Mr. Gleason, Mr. Dowd, and Mr. Dolson say nothing was said about returning the papers, or any of them; that Hart requested to be called before the grand jury, but his request was not acceded to, and it was only after Hart was informed he would not be called that he requested a return of such papers. Mr. Dowd not only corroborates all this, but says, in reference to said papers and their delivery to Mr. Gleason, "and nothing was said by said defendant Hart about when the same should be returned to him, but he did declare that he freely delivered the said papers to the said United States Attorney Gleason for such use as the United States attorney might see fit to put the same to," and that nothing was said about returning same the next day. As to the delivery of these papers, etc., to Mr. Gleason by defendant Hart, Mr. Dolson says:

"That at said conference the said Max M. Hart agreed to go to New York and bring back all of the written and documentary evidence in his possession, or of which he could obtain possession relating to the Oneida Milling Company transactions and the transactions of the defendants in the above-entitled action for the use of United States Attorney Gleason in bringing the guilty parties in the above-entitled case to justice, and agreed to turn over to United States Attorney Gleason all the written or documentary evidence which he, the said Max M. Hart, could obtain in connection with said matter."

Mr. Wise, who was retained in May as additional counsel for Hart, says:

"That on the 26th day of May, 1914, at the city of Syracuse, state of New York, deponent saw and conversed with John H. Gleason, Esq., the attorney of the United States for the Northern district of New York, and then and there stated to said Gleason that he had been informed by said Hart that said Gleason had in his custody or possession certain papers and documents belonging to said Hart, which said papers and documents deponent considered to be necessary and material to the defense of said Hart to the indictment herein, and that deponent could not proceed to the trial upon the indictment herein without having the opportunity to examine said papers and confer with said Hart in relation thereto, and accordingly deponent requested said Gleason, at the time informing said Gleason that he was attorney for said Hart, to return said papers to him; that said Gleason then and there stated to deponent that he would return said papers, that he would endeavor to do so by Saturday, May 30, 1914, and that if he did not return them on such Saturday, he would certainly do so early in the following week; that up to the date of this affidavit said Gleason has not returned any of said papers to deponent, or to said Hart; that in said conversation said Gleason stated to said deponent that said papers would probably have to be used in evidence upon the trial of the indictment herein; that deponent has informed said Max M. Hart that said Gleason has no right to the possession of said papers and documents, and, having obtained them under the circumstances set forth in the affidavit of said Hart, hereto annexed, to retain the same and offer any of them in evidence on the trial herein would be in violation of said Hart's constitutional rights and privileges."

So far as relates to the possession of these papers by Hart prior to the trial and in preparing his defense, the rights of the defendant have been provided for as fac simile copies have been ordered made and delivered to Mr. Wise. The originals can also be seen and examined at any reasonable time prior to or during the trial.

This court is not necessarily called upon at this time to decide wheth-

er or not these papers, which have not been seen by it, can be properly received in evidence on the trial. It may then appear that they have no relevancy—are immaterial. It may appear that it will infringe the constitutional rights of Hart to use them in evidence against him. They may be competent as against the other defendants, or some of them, alone. The United States attorney says he has not had time to examine all of them, but that some are relevant and material and will be necessary for his use on the trial of the indictment. Such as are not material he will return so soon as his examination is completed. The question is, Has Mr. Gleason, as United States attorney, the right to retain any of the papers until after the trial of the indictment? They were produced and delivered to the United States attorney by Hart voluntarily, and for use by such officer in investigating certain acts and conduct alleged to amount to the commission of a crime or crimes, and in which Hart was an actor to a greater or a lesser extent, "and in bringing the guilty parties in the above-entitled case to justice." Hart was implicated, not necessarily to a criminal degree, and hearing of the proceedings before the grand jury then pending, he appeared voluntarily and told his story to Mr. Gleason, and later voluntarily produced and delivered these papers to be used in the proceeding, the investigation, and prosecution, but hoping, and, undoubtedly, expecting, that his statement and the papers would result in no indictment as against himself. He desired and requested to be called before the grand jury, thereby, if called, it is alleged, seeking to secure immunity. In this he was disappointed, and thereupon he demanded the return of such papers, etc. This court cannot hold that under such circumstances any constitutional right of the defendant Hart is violated by the retention of the papers and documents.

These papers, or some of them, may be admissible in evidence against all the defendants except Hart, and is it possible that the United States must turn them over to Hart before the trial and take the risk of their destruction, or of their being sent out of the jurisdiction of this court? Clearly Hart has not been compelled to furnish incriminating evidence against himself, and there is no purpose to deprive him of the use of the papers, etc., prior to and during the trial. There has been no search or seizure but a mere detention of papers placed by the owner in the hands of Mr. Gleason as United States attorney for use in the investigation and prosecution of an offense committed against the laws of the United States, and which surrender and consent the owner of such papers seeks to rescind on finding that he himself is implicated and indicted.

In United States v. Mills (C. C.) 185 Fed. 318, the defendants were indicted and a bench warrant issued. The marshal, so armed, went to defendants' place of business, and not only arrested them, but searched for, found, and seized a large number of books and papers. This seizure included a large number of books and papers which had nothing whatever to do with the offense or transaction mentioned in the indictment or bench warrant. These were turned over to the United States attorney, and the opinion in the case says:

"Having examined these, the district attorney states that they disclose evidence of further offenses, as to which he is about to advise the grand jury

that further indictments, charging additional offenses than those contained in the indictment already found, could be found."

Says the opinion: There was no warrant of seizure "particularly describing the place to be searched and the * * * things to be seized." See fourth amendment. The United States attorney was directed to return such papers. It was held that this was an unreasonable and illegal search and seizure, and that the desire and purpose of the prosecuting officer to use them in finding other indictments and prosecuting them was no justification of such search and seizure.

In Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. ——, decided by the Supreme Court of the United States February 24, 1914, the defendant was arrested by a police officer. Other police officers at or about the time of such arrest went to the home of defendant, and, learning from neighbors where the key was kept, obtained it and entered the house and made a search without warrant. These officers took possession of and removed certain articles and papers found there. Later they returned and carried away other letters and envelopes. The defendant filed a petition for the return of his papers, etc. The court ordered the return of all letters, etc., not pertinent to the charge against the defendant, but denied the petition as to pertinent papers. On the trial the defendant against urged his petition for the return of the balance of such papers, and when this was denied and the papers were offered in evidence he objected that the papers had been obtained without search warrant and by breaking open his house in his absence, in violation of the fourth and fifth amendments, etc. The objections were overruled, a conviction was had, and on writ of error to the Supreme Court the conviction was reversed. The court, after stating the facts, said:

"What, then, is the present case? Before answering that inquiry specifically, it may be well, by a process of exclusion, to state what it is not. It is not an assertion of the right on the part of the government, always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime. * * * 1 Bishop on Criminal Procedure, § 211; Wharton, Crim. Plead. and Practice (8th Ed.) § 60; Dillon v. O'Brien and Davis, 16 Cox C. C. 245. Nor is it the case of testimony offered at a trial where the court is asked to stop and consider the illegal means by which proofs, otherwise competent, were obtained—of which we shall have occasion to treat later in this opinion. Nor is it the case of burglar's tools or other proofs of guilt found upon his arrest within the control of the accused. The case in the aspect in which we are dealing with it involves the right of the court in a criminal prosecution to retain for the purposes of evidence the letters and correspondence of the accused, seized in his house in his absence and without his authority, by a United States marshal, holding no warrant for his arrest and none for the search of his premises."

The court also referred to Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575, and said:

"At the trial certain papers, which had been seized by police officers executing a search warrant for the discovery and seizure of policy slips, and which had been found in addition to the policy slips, were offered in evidence over his objection. The conviction was affirmed by the Court of Appeals of New York ([People v. Adams] 176 N. Y. 351 [68 N. E. 636, 63 L. R. A. 406, 98 Am. St. Rep. 675]), and the case was brought here for alleged violation of the

fourth and fifth amendments to the Constitution of the United States. Pretermitting the question whether these amendments applied to the action of the States, this court proceeded to examine the alleged violations of the fourth and fifth amendments, and put its decision upon the ground that the papers found in the execution of the search warrant, which warrant had a legal purpose in the attempt to find gambling paraphernalia, was competent evidence against the accused, and their offer in testimony did not violate his constitutional privilege against unlawful search or seizure, for it was held that such incriminatory documents thus discovered were not the subject· of an unreasonable search and seizure, and in effect that the same were incidentally seized in the lawful execution of a warrant, and not in the wrongful invasion of the home of the citizen and the unwarranted seizure of his papers and property."

In the case at bar there was no necessity for a search warrant or· the interposition of the marshal. Here there has been no invasion of the home of the defendant Hart, who voluntarily produced and turned over the incriminating documents.

And the case at bar.is not within Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, where it was held:

"It does not require actual entry upon premises and search for and seizure of papers to constitute an unreasonable search and seizure within the meaning of the fourth amendment; a compulsory production of a party's private books and papers to be used against himself or his property in a criminal or penal proceeding, or for a forfeiture, is within the spirit and meaning of the amendment. * * * The seizure or compulsory production of a man's private papers to be used in evidence against him is equivalent to compelling him to be a witness against himself, and, in a prosecution for a crime, penalty, or forfeiture, is equally within the prohibition of the fifth amendment."

In Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, it was held: ·

"The search and seizure clause of the fourth amendment was not intended to interfere with the power of courts to compel the production upon a trial of documentary evidence through a subpœna duces tecum."

In Holt v. United States, 218 U. S. 245, 31 Sup. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138, it is held:

"The prohibition of the fifth amendment against compelling a man to give evidence against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, and not an exclusion of his body as evidence when it is material; and so held that testimony of a witness that the accused put on a garment and it fitted him is admissible, whether the accused had put on the garment voluntarily or under duress."

I am of the opinion, conceding Hart could not have been compelled to produce these papers and documents by subpœna duces tecum without gaining immunity for himself, that his voluntary production of them, and his voluntary delivery of them to the United States attorney without promise, threat, or duress, and under the circumstances disclosed by the statements of Dolson, Dowd, and Gleason, which are at variance with that of Hart in but one or two material particulars, to the end that Mr. Gleason should use them for the purpose of investigating the matters of the Oneida Milling Company, etc., and ascertaining whether or not a crime had been committed by any one, and, if so, by whom, and also for the purpose of prosecuting the guilty party or parties in case a crime had been committed, fully justifies the

United States attorney in retaining control thereof until the indictments are disposed of. And I think this court would be remiss in its duty should it direct a return of these papers, thereby placing them beyond the reach, possibly, of the United States, and seriously, it may be, hampering the administration of justice. By their retention no wrong will be done Hart, for the question of their use as evidence will be determined on the trial on the facts disclosed. The question has been timely raised. See Weeks v. United States, supra. Burglar's tools, used by the owner to commit a crime, may be kept from his possession when found on his person or on his premises or elsewhere, and as it is a crime to enter into a conspiracy with others to defraud, etc., and to use the mails to effect the object of the conspiracy, it seems to me that the writings of the defendant, used by them to form the conspiracy and in committing overt acts, and showing its formation or existence and attempted execution, should be treated as tools used in the perpetration or attempted perpetration of crime, and held to be used in evidence, especially when voluntarily surrendered to the authorities by the offenders for the purpose of turning suspicion from themselves, and even under a promise made, in ignorance of the facts, to return same. In any event, I do not think this court should enforce specific performance of such an agreement by summarily directing the United States attorney to surrender such papers.

Motion denied.