## UNITED STATES v. POLLER.

### No. 393.

Circuit Court of Appeals, Second Circuit.

July 28, 1930.

Charles H. Tuttle, U. S. Atty., of New York City (Alvin McKinley Sylvester, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Horace G. Marks, of New York City, for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

Poller was a bonded truckman, doing business in the city of New York, under a license of the Treasury, which allowed him to take imported goods from the local customs authorities. These had suspected that Swiss watch movements were being imported in fraud of the customs, manifested as choco-

late sweets, and that a case of this sort had been shipped, marked "L. A. B. #2," which would be so manifested. They also learned that Poller had filed an "in transit" permit for this case, which would allow it to be taken and carried in bond to Philadelphia, where it would·first be examined. The ship's manifest showed that the case was consigned to Poller; the permit, that he had entered it and that it would be taken by his truck. Upon its arrival they opened the case, found that it contained watch movements, and closed it again. It remained two days on the wharf, no one coming to get it, though one of Poller's truckmen had originally called for it before it was unladen.

A customs agent then went to Poller's place of business, a small shanty a few feet square, and asked him why he had not called for the case. Poller said that he had had a "tip" not to go near it. Two more agents then entered, to whom Poller refused to say any more, upon which he was placed under arrest. The agents then searched the shanty and seized the documents here in question. These consisted of a carrier's customs manifest for the case, to be shipped by Poller to Philadelphia, a letter of his to the delivery clerk of the steamer asking delivery to his truckman, an "in transit" entry made by him for the case in bond, a notification by the French Line to him that the case was manifested to him, a bill of lading from him as agent for one, Bieshuns, to a Philadelphia forwarding company, a letter from Bieshuns notifying him that the case would arrive, an invoice of the case to him from the French consignor, and a statement of the charges of the customs broker. Some invoices and "in transit" entries in Poller's name for earlier cases of chocolates were also seized, and a time book, a memorandum book, a cheque book, a note book bearing another name and some indifferent correspondence. Poller was arraigned before a commissioner and held to bail. The papers having come into the possession of the district attorney, he obtained an order to show cause why they should not be returned, and, before the case was finally submitted, he was indicted. The District Judge held that the arrest was lawful, but that the papers should be returned, on the ground that our decision in U. S. v. Kirschenblatt (C. C. A.) 16 F.(2d) 202, 51 A. L. R. 416, was controlling, and had not been overruled by Marron v. U. S., 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231. The United States appealed, and the questions involved are three: Whether the order was appealable; whether the arrest was lawful; whether the papers could be seized, and, if so, how many of them.

█ If this proceeding had been concluded before indictment found, the order would certainly have been appealable. Perlman v. U. S., 247 U. S. 7, 38 S. Ct. 417, 62 L. Ed. 950; Burdeau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159. The point here taken is that Poller was indicted before final submission of the proceeding; that immediately upon indictment found, it became a part of the prosecution. Or, if that be not true, then in any event that Poller was arraigned before a commissioner and held to bail before the proceeding was even started. As to the second objection, it is enough to say that the proceedings before the commissioner were in no event part of the prosecution, nor indeed was the commissioner a court at all. Todd v. U. S., 158 U. S. 278, 15 S. Ct. 889, 39 L. Ed. 982; Kirvin v. U. S., 5 F.(2d) 282 (C. C. A. 2). In Perlman v. U. S., for example, the motion was made after arrest. Conceivably it might be held that the proceeding became merged in the indictment, but the result would be to make the appealability of the order depend upon the diligence of the prosecution of the proceeding or of the judge in deciding it, either of which is an unsatisfactory test. It seems to us more reasonable to say that it is the time of its initiation which counts, and for this we have the language of the opinion in Cogen v. U. S., 278 U. S. 221, 225, 49 S. Ct. 118, 73 L. Ed. 275, and our own decision in U. S. v. Gowen, 40 F.(2d) 593. The last it is perhaps not fair to use, as apparently the point was not raised, but the first, though obiter, we must follow. Justice Brandeis in that case was laying down the principles which were to control on a question which had been much vexed theretofore; we may not assume that his language was lightly·used, especially when independently we should decide the same way, if we were free. We hold therefore that it is the beginning of the proceeding which determines the appealability of the order, and that, since this was before indictment, we have jurisdiction of the cause.

█ We agree with the District Judge that the arrest was lawful, on the ground that the agents had reasonable cause to believe that Poller had committed a felony by trying to enter goods into the United States by means of false documents (section 491, title 19, U. S. Code [19 USCA § 491]), and conspiring with others to do so. As soon as the case was opened and the truth known, there could of course be no doubt that somebody was com-

mitting that crime, and the only question was of Poller's connection with the guilty parties. It is indeed true that his guilt did not appear beyond peradventure; he might still have been no more than an innocent tool of the real principals. However, while suspicion is not enough, reasonable grounds of belief fade into it imperceptibly; and it appears to us that the agents here were on the right side. The substitution of chocolates must be made in New York or Philadelphia before the case was opened. The principals had selected Poller before the goods arrived; he was the consignee and he got out the "in transit" entry. There had been obviously a concert between them even before the case had been shipped; the consignor must have been advised so to consign them. This showed more than the casual selection of a truckman. It was still possible of course that Poller might be innocent, but even without more we should think it unlikely. However, the other evidence turns the scale, if there be any doubt. He had learned of the discovery of the fraud in some undisclosed way, and thereupon he avoided any further connection with the case. The mere fact that he was informed of the discovery was in itself an important circumstance. This knowledge could not have been shared by many people; it would obviously have been kept as close as possible. Perhaps his informant, who must have been in privity with the principals, merely meant to prevent the case from coming to the possession of the Philadelphia consignee, but he probably meant also to warn Poller. In any event, a bonded truckman, whose reputation was at stake, finding himself the innocent tool of such a conspiracy, would have been likely to do something to clear himself. His attempt merely to be quit of the fraudulent goods, with which he had been so nearly connected, was some evidence of his complicity. On the whole we think there was ground to attribute to him some conscious part in the fraud.

When a man is arrested, the extent to which the premises under his direct control may be searched has proved a troublesome question. We tried in Kirschenblatt's Case to set limits upon it narrower than those recognized in the broad statements of the textbooks (Wharton, Criminal Procedure, § 97; Bishop, Criminal Procedure, §. 211), and in some of the decided cases. This we did, following as best we could the doctrine as we understood it of the Supreme Court, and because it seemed unreasonable to suppose that an arrest should give wider latitude of search than a search warrant itself. We were not in accord with at least the language of a number of the cases in other circuits, which followed the usual form of statement that the search might include any evidence of the crime. Browne v. U. S., 290 F. 870 (C. C. A. 6); Sayers v. U. S., 2 F.(2d) 146 (C. C. A. 9); Marron v. U. S., 8 F.(2d) 251 (C. C. A. 9); Id., 18 F.(2d) 218 (C. C. A. 9); Furlong v. U. S., 10 F.(2d) 492 (C. C. A. 8); Maynard v. U. S., 57 App. D. C. 314, 23 F.(2d) 141; Estabrook v. U. S., 28 F.(2d) 150 (C. C. A. 8). One of these, Marron v. U. S., went to the Supreme Court and was affirmed, (275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231), in which the seizure of a number of documents was sustained, which certainly went beyond anything which we had recognized as permissible. In U. S. v. Gowen (C. C. A.) 40 F.(2d) 593, we had occasion to reconsider Kirschenblatt's Case, and there we held that it must be deemed overruled. Although U. S. v. Gowen is now before the Supreme Court on certiorari, we must adhere to it until otherwise advised, and indeed nothing has occurred to change our views as to the scope of the Supreme Court's decision.

We think therefore that the more important documents seized by the agents were within their powers. Certainly this is true of all those which were prepared, sent to, or received by, Poller in connection with this very case, "L. A. B. #2." Yet we do not understand Marron's Case to go so far as to include all evidence which may prove incriminatory upon the trial. Justice Butler certainly did not intend all such when he said that the search was justified because the documents were "used to commit the offense" or "to carry it on." Page 199 of 275 U. S., 48 S. Ct. 74, 77. We understand this to mean that only what is being so used is within the powers of the officers. Some of the papers in Marron's Case, indeed, were bills for past gas, electric light, water and telephone services, but these were nevertheless thought to be instruments for continuing the unlawful business there at bar, and this was enough. It is true that Justice Butler twice cited Kirschenblatt's Case with approval, but by this we understand no more than that he meant to lay down a narrower rule than that which had been broadly stated in the books, not that he accepted the limits which we there imposed. We must therefore modify the order by allowing the district attorney to retain those papers which bore upon the importation of case, "L. A. B. #2." As to the rest, it will stand, that is to say, as to the papers

which covered earlier shipments of putative chocolate sweets and all the books. These last contained no entries regarding this transaction, and while their very omissions might be pregnant proof of guilt, it would be plainly untrue to say that they were "used to carry on" the crime in question. The reason for also returning the documents recording past transactions of the same kind is, that here we are concerned not with a continuing business, as was true in Marron's Case, but with a single importation. Earlier transactions, though like the books, possible relevant evidence, cannot therefore have been said to have been used at any time to perpetrate the crime in question.

In conclusion it is only fair to observe that the real evil aimed at by the Fourth Amendment is the search itself, that invasion of a man's privacy which consists in rummaging about among his effects to secure evidence against him. If the search is permitted at all, perhaps it does not make so much difference what is taken away, since the officers will ordinarily not be interested in what does not incriminate, and there can be no sound policy in protecting what does. Nevertheless, limitations upon the fruit to be gathered tend to limit the quest itself, and in any case it is something to be assured that only that can be taken which has been directly used in perpetrating a crime. The remedy may not be very extensive, but it is something, and it is all that can be given, as we understand the present decisions. A man is certainly subject to some search of his premises upon his arrest; if it would have been better to allow nothing without warrant but a search of his person, it is too late to hold so now.

Order reversed, and cause remanded for further proceedings in conformity with the foregoing.