**MATTHEWS v. CORREA,**
**United States Atty.**

**No. 204.**

Circuit Court of Appeals, Second Circuit.

April 16, 1943.

Arthur Garfield Hays, of New York City (Henry E. Coleman and Oscar Stabiner, both of New York City, on the brief), for appellant.

Bruno Schachner, Asst. U. S. Atty., of New York City (Mathias F. Correa, U. S. Atty., of New York City, on the brief), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judge.

CLARK, Circuit Judge.

This is a proceeding by the petitioner to obtain the return of certain property seized at the time of her arrest under a warrant, and "to suppress the evidence thereof." An earlier attempt by petitioner to secure this relief was before us in Matthews v. Correa, 2 Cir., 131 F.2d 597, an appeal which we dismissed because the order from which it was taken was not final, since it provided for the return by the United States Attorney of such of the property as he deemed himself not entitled to retain and gave the petitioner leave to move again after the Attorney had acted. Now it appears that the Attorney did return certain of the property seized, but retained and claimed the right to hold seven address books and one account book—a black book, 8 by 12 inches—and in consequence this new proceeding was begun. Hearing was held below on affidavits submitted by the parties, as a result of which the court filed its order denying the petition, and this appeal followed.

From the affidavits of the parties it appears that petitioner was arrested at her home, 15 Sutton Place, New York City, on June 22, 1942, by three agents of the Federal Bureau of Investigation on a warrant issued on a complaint made by one of the agents charging her with violation of 11 U.S.C.A. § 52, sub. b, and specifically with concealing money, merchandise, and other property from her trustee in bankruptcy. The three agents then searched her premises, a one-family house, and took away various articles of personal property, including that in question. It does not appear just where this property was found; while petitioner swears the officers searched

the house "from cellar to roof," she says merely that certain of the property originally was found in her purse and that the other items "were taken from drawers and tables in the house." There is some dispute as to the nature of the books. Petitioner asserts that only one of her address books was in existence prior to her bankruptcy (which occurred December 4, 1940), and that the book of account had no relation to any business conducted by her prior to the bankruptcy. But the affidavit of a government agent is that the account book shows petitioner's receipts and disbursements from October 2, 1939, to June 20, 1942, and that of the address books two contain entries pertaining to receipts and expenditures, some of which appear to relate to the period on or about the defendant's bankruptcy, while all contain addresses of various suppliers which defendant used prior to her bankruptcy and identify such persons by names, addresses, and telephone numbers.

■■■ Bankruptcy Act, § 29, sub. b, 11 U.S.C.A. § 52, sub. b, so far as here material, reads as follows: "A person shall be punished by imprisonment for a period of not to exceed five years or by a fine of not more than $5,000, or both, upon conviction of the offense of having knowingly and fraudulently (1) concealed from the receiver, custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or from creditors in any proceeding under this title, any property belonging to the estate of a bankrupt; * * * or (8) after the filing of a proceeding under this title, withheld from the receiver, custodian, trustee, marshal, or other officer of the court any document affecting or relating to the property or affairs of a bankrupt, to the possession of which he is entitled." § 70, 11 U.S.C.A. § 110, provides that the bankruptcy trustee, upon his appointment and qualification (here January 6, 1941), is vested by operation of law with the bankrupt's title to various inclusive types of property there listed beginning with "(1) documents relating to his property." The original complaint made here upon which the warrant of arrest was issued appears to have been based particularly on (1) of § 29, sub. b; while the retention of the property is now justified chiefly on the ground that it constituted the "fruit" of a crime under (8). And the Government relies on Marron v. United States, 275 U.S. 192, 48 S.Ct. 74,

72 L.Ed. 231, that when officers are making a valid search and come upon another crime being committed in their presence they are entitled to seize the fruits thereof. It relies further on the well settled rule—conceded by petitioner—that officers in making an arrest may search the person lawfully arrested and the place where the arrest was made "to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody." Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145, 51 A.L.R. 409; Cheng Wai v. United States, 2 Cir., 125 F.2d 915.

Petitioner claims, both because of the above facts and because of the manner and form of the search, that it was merely "exploratory and general and made solely to find evidence of * * * guilt," as condemned in United States v. Lefkowitz, 285 U.S. 452, 465, 52 S.Ct. 420, 423, 76 L.Ed. 877, 82 A.L.R. 775, and in Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374.

■■■ The problem before us, therefore, is to walk gingerly among or between these precedents, with due circumspection, so far as lies in our power, for the constitutional rights of the petitioner and the need that government officials be not unduly hampered in tracking down crime. Considering, first, formal factors of demarcation, this case, so far as the affidavits disclose, seems to us more nearly like the Marron case than the others. Here in the course of a search which we cannot say was improper or undue, a crime was disclosed; and the property involved was thereupon seized. In the Lefkowitz and Go-Bart cases, on the other hand, there was no crime being committed in the presence of the officers and a search was being made to produce evidence. We do not think it is important that the search may go back to a complaint under one subdivision, and the seizure under another, of this statute. Actually these offenses are closely allied, and it may be difficult not to hold them overlapping under the conditions here disclosed; conceivably the only difference may be that if these articles were concealed and taken "from drawers," the first might be more applicable than if taken from "tables." The important thing is that the search which turns up the offense must itself have been legal. In United States v. Jankowski, 2 Cir., 28 F.2d 800, state troopers who

stopped a car for improper headlights found therein liquor being illegally carried, and we held that they could properly arrest the driver for this offense and retain the whiskey See, also, United States v. 71.41 Ounces Gold Filled Scrap, 2 Cir., 94 F.2d 17.

But we should go beyond mere formal distinction of the cases, for as said in the Go-Bart case, supra, 282 U.S. at page 357, 51 S.Ct. at page 158, 75 L.Ed. 374: "There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." The affidavits do not give us many details, but so far as they go, the search does not appear to us unreasonable. Under the circumstances of the charge, it would seem most appropriate that the officers should look around for property concealed or withheld from the bankruptcy trustee; and if they found it or documents concerning it, this would be matter which they should retain. The line between fruit of the crime itself and mere evidence thereof may be narrow; perhaps this turns more on the good faith of the search than the actual distinction between the matters turned up. In any event, the articles in question are more than evidential; they are the very things withheld.

Nor can we say that the intensity of the search exceeded reasonable bounds. Here, too, it is difficult to say when proper vigor passes into unreason. In United States v. Poller, 2 Cir., 43 F.2d 911, 914, 74 A.L.R. 1382, we suggested that under the then decisions the limitations were only "upon the fruit to be gathered" and that these would "tend to limit the quest itself." Possibly, however, the law now goes further and limits the manner of search; at any rate, the Lefkowitz and Go-Bart cases emphasized that in the Marron case the articles seized were visible and accessible and in the offender's immediate custody. (Some liquor and a ledger were found in a closet; various bills for gas and other service were beside the cash register.) But there is nothing to indicate that the articles here were more concealed than if they had been in a closet. And the Attorney has shown reasonable grounds for the conclusion that these books, though dealing in part with matters subsequent to the bankruptcy, did properly concern matters with which the trustee was concerned.

The Government further claims that petitioner has no standing here because the bankruptcy trustee has title to the articles. Even though the trustee is not actually present, his claims would still persist until it were shown that he had definitely abandoned the property. In re Mirsky, 2 Cir., 124 F.2d 1017, certiorari denied Mirsky v. Conlew, Inc., 317 U.S. 638, 63 S.Ct. 29, 87 L.Ed. ——. It is true that "one who has no proprietary or possessory interest in the premises searched or property seized may not suppress evidence obtained by a search and seizure violative of the rights of another." In re Nassetta, 2 Cir., 125 F.2d 924, 925. As this quotation and the cases there cited indicate, a possessory interest alone seems adequate, compare Connolly v. Medalie, 2 Cir., 58 F.2d 629; and it would seem that petitioner's possession of the personal property here would be sufficient interest in accordance with the usual rule that possession alone is adequate against a trespasser. McKee v. Gratz, 260 U.S. 127, 136, 43 S.Ct. 16, 67 L.Ed. 167. It is true that the contrary seems to have been held in Lewis v. United States, 10 Cir., 92 F. 2d 952, which quotes Wilson v. United States, 221 U.S. 361, 380, 31 S.Ct. 538, 544, 55 L.Ed. 771, 779, Ann.Cas.1912D, 558. This latter case, however, dealt with a somewhat different question, whether an officer and custodian of documents owned by a corporation could refuse to produce them on the ground that they incriminated him. But at any rate, it was the petitioner's residence which was being searched, and we think, therefore, she could properly raise the question of legality and had a sufficient interest to move for suppression at the trial of any evidence found by an improper search.

As we pointed out in Cheng Wai v. United States, supra, while issues such as this may be tried out on affidavits, it is often difficult to get a complete view of all relevant facts in this way. Because of the necessary interest we have in preserving the constitutional rights of an accused, and because there may be additional facts of importance not before us, including the extent to which these books actually deal with pre-bankruptcy activities of petitioner, we think that, as in the Cheng Wai case, our affirmance herein should be without prejudice to renewal by petitioner of her contention at the trial.

As thus modified, the order is affirmed.