## HARRIS v. UNITED STATES.
### No. 3105.

Circuit Court of Appeals, Tenth Circuit.
Oct. 26, 1945.

Rehearing Denied Nov. 28, 1945.

Herbert K. Hyde, of Oklahoma City, Okl. (Lee Williams, of Oklahoma City, Okl., on the brief) for appellant.

Robert E. Shelton, Asst. U. S. Atty, of Oklahoma City, Okl. (Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., on the brief), for appellee.

Before MURRAH, Circuit Judge, and RICE and SAVAGE, District Judges.

MURRAH, Circuit Judge.

This appeal involves the reasonableness of a search and seizure, pursuant to which appellant was indicted, tried and convicted on evidence obtained by such challenged search and seizure.

In execution of two warrants for the arrest of appellant—one duly issued upon a criminal complaint alleging violation of the Mail Fraud Statute, 18 U.S.C.A. § 338, and the other for violation of the National Stolen Property Act, 18 U.S.C.A. §§ 413–419— four or five special agents of the Federal Bureau of Investigation went to the apartment of appellant at 2308 North Ellison, Oklahoma City, Oklahoma, about 1:30 P. M. where they found appellant, and immediately placed him under arrest. In connection with the arrest, and for the declared purpose of "looking for two $10,000 cancelled checks of the Mudge Oil Company which our investigation established had been stolen from the offices of the Mudge Oil Company * * *," and for "any means that might have been used to commit these two crimes, such as burglary tools, pens or anything that could be used in a confidence game of this type," the agents proceeded to make a "thorough search" of appellant's apartment consisting of a living room, bedroom, kitchen and bathroom.

After searching for about five hours, one of the agents discovered a sealed envelope in a bureau drawer in the bedroom under some underclothes, upon which was written "George Harris, personal papers." This envelope was torn open and inside it was a smaller one which contained eight Notice of Classification cards, DSS Form 57 and eleven Registration Certificates DSS Form 2, stamped Local Board, No. 7, Oklahoma County, 84, 825 Cotton Exchange Building, Oklahoma City, Oklahoma. These cards and certificates had been originally delivered to this Draft Board by the United States Government to be used by such Board in the administration of the Selective Training and Service Act of 1940, 50 U.S. C.A.Appendix, § 301 et seq. The appellant was later charged by an indictment containing nineteen counts for offenses growing out of his unlawful possession of these cards and certificates. After timely motions to quash, suppress and dismiss, a jury having been waived, the case was tried to the court. The cards and certificates were offered and admitted in evidence over appellant's objection, and based upon this evidence the court found appellant guilty of various counts contained in the indictment, and imposed the concurrent sentences from which this appeal is taken.

Admittedly the officers had no search warrant describing the premises searched or the articles seized, and the only asserted authority for the search and seizure was as an incident to and contemporaneously

with appellant's lawful arrest within the premises searched. On appeal, appellant contends that the search and seizure was constitutionally unreasonable and the court therefore erred in admitting the seized articles in evidence against him.

■■ The rights of one to be secure in his person, papers and effects, against unreasonable search and seizure, and not to be compelled in a criminal case to be a witness against himself are fundamental rights under the 4th and 5th Amendments to the Constitution "[which] affect the very essence of constitutional liberty and security." Boyd v. United States, 116 U. S. 616, 6 S.Ct. 524, 532, 29 L.Ed. 746; Weeks v. United States, 232 U.S. 383, 391, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177. The true meaning of these rights are to be derived from what was deemed an unreasonable search and seizure at the time of the adoption of the Amendments to the Constitution,[1] and are to be construed in a manner which will serve the public interest on the one hand, while protecting and safeguarding the personal rights of individuals on the other. Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790.

■ In constitutional language, a search and seizure without the authority of a search warrant issued upon probable cause, supported by oath or affirmation particularly describing the place to be searched and the person or things to be seized, is an unreasonable search and seizure and a conviction based upon evidence thus obtained cannot stand. Weeks v. United States, supra; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647.

■■ We start then with the proposition that general exploratory searches for the purpose of uncovering evidence of crime, or for obtaining information, either with or without a search warrant is unreasonable and therefore within the constitutional ban. Boyd v. United States, supra; Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319, 24 A.L.R. 1426; Gouled v. United States, supra; Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654. "It has always been assumed that one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest therein." Agnello v. United States, 269 U.S. 20, 32, 46 S.Ct. 4, 6, 70 L.Ed. 145, 51 A.L.R. 409. See also Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775; Byars v. United States, 273 U.S. 28, 47 S. Ct. 248, 71 L.Ed. 520. It has, however, always been recognized under English and American law, before and after the 4th Amendment, that when a man is legally arrested for an offense, whatever is found upon his person or in his control which is unlawful for him to have, and which may be used to prove the offense, may be seized and held as evidence in a prosecution against him.[2]

Thus in Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231, the court held that as an incident to a lawful arrest, for a crime committed in their presence, the officers were authorized without a search warrant to contemporaneously search the place where the crime was being committed in order to find and seize the things used to carry on the criminal enterprise; that such authority extended to all parts of the premises used for the unlaw-

---

[1] Willoughby on the Constitution, Sec. 720, p. 1172. Cooley Constitutional Limitations, 8th Ed. p. 612. Underhill's Criminal Evidence, 4th Ed., Sec. 795, p. 1441.

[2] Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Boyd v. United States, 116 U.S. 616, 6 S. Ct. 524, 29 L.Ed. 746; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L. Ed. 652, L.R.A.1915B, 834, Ann.Cas. 1915C, 1177; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409; Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; United States v. Davis, 2 Cir., 151 F.2d 140; United States v. Lindenfeld, 2 Cir., 142 F. 2d 829; Matthews v. Correa, 2 Cir., 135 F.2d 534; United States v. Tot, 3 Cir., 131 F.2d 261; United States v. Poller, 2 Cir., 43 F.2d 911, 74 A.L.R. 1382; United States v. Welsh, D.C., 247 F. 239; Welsh v. United States, 2 Cir., 267 F. 819; Colyer v. Skeffington, D.C., 265 F. 17; United States v. Murphy, D.C., 264 F. 842; Flagg v. United States, 2 Cir., 233 F. 481; United States v. Hart, D.C., 214 F. 655; United States v. Mills, C.C., 185 F. 318, appeal dismissed 220 U.S. 549, 31 S.Ct. 597, 55 L.Ed. 579; United States v. Wilson, C.C., 163 F. 388. See also Concerning Searches and Seizures, 34 Harvard Law Review, 361; Underhill's Criminal Evidence, Sec. 799, 4th Ed., p. 1455; and 47 Amer.Juris.Search and Seizure, Sec. 19. See also Annotation, 82 A.L.R. 782.

ful purpose, and included those things so closely related to the criminal enterprise as to be necessary for its maintenance. See also United States v. Lindenfeld, 2 Cir., 142 F.2d 829, and United States v. Davis, 2 Cir., 151 F.2d 140; Matthews v. Correa, 2 Cir., 135 F.2d 534; United States v. Poller, 2 Cir., 43 F.2d 911, 74 A.L.R. 1382. And, in the Agnello case, supra, the court, while sustaining the search of the place where the arrest was made, as reasonably incident thereto, held that the right did not extend to other places and that the search of Agnello's house several blocks distance from where he was arrested could not be sustained as reasonably incident to his arrest. By the same rationale, it has been held that a "clean sweep of all the papers and documents found" on the premises where the arrest was made was not reasonably incident to the lawful arrest, as all general exploratory searches in the hope that evidence of crime might be found. Silverthorne Lumber Company v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 619, 24 A.L.R. 1426; Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775.

It is significant that all cases which deal with the authority to search and seize incident to a lawful arrest make a clear distinction between general and exploratory searches made solely to find evidence of guilt and those searches to find and seize the instrumentalities or the fruits of the crime for which the arrest is made. See also, Boyd v. United States, 116 U.S. 616, 6 S. Ct. 524, 29 L.Ed. 746; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L. Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Agnello v. United States, supra.

"The line between fruit of the crime itself and mere evidence thereof may be narrow" and perhaps turn more on the good faith of the search than the actual distinction between "fruits" and "evidence." Matthews v. Correa, supra [135 F.2d 536]. It cannot be doubted that a search for the fruits or the means of a crime, either under authority of a valid search warrant or as an incident to a lawful arrest, may exceed the bounds of constitutional reasonableness, and our province is to determine whether the officers have exceeded the legitimate prerogatives conferred by the warrant regardless of the object of their quest. See Matthews v. Correa, supra; United States v. Lindenfeld, supra; In re Ginsberg, 2 Cir., 147 F.2d 749. The query in either case is whether the search has exceeded the bounds of reasonableness.

Appellant bases his contentions of unreasonableness on the thesis that the search was general, exploratory and evidentiary, but the record does not support this contention. The officers did not enter to explore—to see what they could find. They entered to execute a valid warrant of arrest. The incidental and contemporaneous search was thorough—it was as thorough as its nature required, but the reasonableness of a search is not necessarily to be judged by its thoroughness, so long as it has a reasonable relationship to its object. Appellant was arrested for offenses involving the forgery of a $25,000 check drawn on the Mudge Oil Company and signed by designated officers, and the testimony in this case is to the effect that the officers were looking for two $10,000 cancelled checks which had been stolen from the offices of the Mudge Oil Company, and which the officers had good reason to believe had been used as a part of the means for forging the $25,000 check. The avowed purpose of the search was for the means by which the crime was committed and it extended no further and was no more extensive than necessary to uncover the articles sought. It is not likely that the checks would be visibly accessible. By their very nature they would have been kept in some secluded spot, and it is not unlikely or unreasonable to assume that they would be found encased in an envelope where the draft cards and certificates were in fact discovered.

To be sure, the authority to search for the fruits or the means of the offense as an incident to the lawful arrest, like all prerogatives based on reason, is susceptible to oppressive abuse. The authority must be confined to narrow limits and utmost good faith exacted. Courts must exercise care lest we unwittingly sanction an evidential exploration under the guise of a declared legitimate purpose. The restraint can best be imposed by an inquiry into the bona fides of the declared purposes of the search and the trial court is the first and best judge of whether the

challenged search was reasonably incident to its permissible purposes.

■ When the search was challenged in this case, the trial court conducted an extensive inquiry concerning its purposes and scope, and based upon all of the evidence concluded that the search and seizure was not unreasonable. While it is also our duty to exercise circumspection for the constitutional rights of the one accused of crime, we must accord to the trial court the primary responsibility of balancing orderly and efficient enforcement of the criminal laws against the constitutional rights of those charged with crime. When judged by these standards, we are unable to say that the search for the fruits and means of the crime charged as an incident to the lawful arrest therefor was unreasonable under the attendant circumstances.

But, conceding the authority of the officers to search as they did for the instruments or fruits of the crime for which appellant was arrested, the further question is posed whether the officers were authorized to seize the instruments of a crime for which appellant was not arrested and which were wholly unrelated to the crime charged. In other words, conceding the validity of the search, was the seizure nevertheless bad. If the officers had been in under a search warrant sufficiently describing the premises to be searched but which did not describe or particularize the articles seized, the seizure would be unauthorized, and the seized articles would be inadmissible, for the requirement that a search warrant particularly describe the things to be seized "prevents the seizure of one thing under a warrant describing another." Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 76, 72 L.Ed. 231.

It is said that the authority to search one's house or place of business contemporaneously with his lawful arrest therein upon a valid warrant is no greater than that conferred by a search warrant issued upon adequate proof sufficiently describing the premises and the things sought to be seized. United States v. Lefkowitz, supra; Papani v. United States, 9 Cir., 84 F.2d 160; United States v. Thomson, 7 Cir., 113 F.2d 643, 129 A.L.R. 1291; United States v. Kirschenblatt, 2 Cir., 16 F.2d 202, 51 A.L.R. 416. "Indeed, * * * security against unlawful searches is more likely to be attained by resort to search warrants than by reliance upon the caution and sagacity of petty officers while acting under the ex-citement that attends the capture of persons accused of crime." United States v. Lefkowitz, supra [285 U.S. 452, 52 S.Ct. 423]. From this premise it may be argued that seizures incidental to lawful arrest should be limited to the instrumentalities and fruits of the crime for which the arrest is made. But, we must not permit the technical rules of logic to blindly lead us to an absurd result. "We are not to strain an immunity to a point at which human nature rebels against honoring it in conduct." Judge Cardozo in People v. Chiagles, 237 N.Y. 193, 142 N.E. 583, 584, 32 A.L.R. 676.

It is important to consider that the function of a search warrant is to authorize the search of one's home before any arrest is made and it is therefore prudent to confine the seizure to the things specified therein—such is the constitutional command, while a search as an incident to a lawful arrest is for the purpose of seizing the fruits or the means of committing the crime, and by its nature necessarily cannot be particularized. To illustrate, in the Marron case, supra, the seizure was unauthorized by the search warrant under which the officers legally entered, but it was sustained as an incident to the lawful arrest.

■ While a search in violation of the constitution is not made lawful by what it brings to light, Byars v. United States, 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520 neither is a search which is valid in its inception made unlawful merely because it uncovers evidence of a crime not contemplated by such search. Gouled v. United States, 255 U.S. 298, 311, 312, 41 S.Ct. 261, 65 L.Ed. 647; Matthews v. Correa, supra; Shelton v. United States, 7 Cir., 50 F.2d 405; United States v. Kirschenblatt, supra; United States v. Charles, D. C., 8 F.2d 302; Milam v. United States, 4 Cir., 296 F. 629. "The important thing is that the search which turns up the offense must itself have been legal." Matthews v. Correa, supra. The articles involved here were uncovered in the course of a lawful search and they were themselves "the means of committing" a crime against the United States.

■ It would indeed be a flouting of the law to hold that officers while legally searching as an incident to a lawful arrest could not seize the instruments or the means of committing another and wholly unrelated offense unexpectedly uncovered

by such search, simply because they did not enter for that purpose. In our judgment, the immunity does not extend that far.

The judgment is affirmed.