**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Carlos Rafael Maury COLL,**
**Defendant.**

**Crim. No. 245–72.**

United States District Court,
D. Puerto Rico.

March 12, 1973.

José A. Quiles, Asst. U. S. Atty., Old San Juan, P. R., for plaintiff.

Carlos Coll Carpintero, Jorge Arroyo Fernández, Santurce, P. R., for defendant.

### ORDER

TOLEDO, District Judge.

This cause is before the Court upon defendant's motion for suppression of evidence and memorandum of law in support filed on August 21, 1972. On

September 26, 1972, plaintiff filed a motion in opposition and memorandum of law. An evidentiary hearing was held on November 29, 1972, in relation to this motion. On this latter occasion the Court granted the parties time to file supplemental memorandum. Defendant's supplemental memorandum was filed on January 12, 1973 and plaintiff's reply on February 1, 1973.

Defendant's contention is based on three basic grounds:

1) The search in this case was made without a warrant and without authority.

2) The search was not made incident to an arrest.

3) The search was unreasonable.

4) That because of the aforementioned three reasons, the search is in violation of the Fourth Amendment of the Constitution of the United States.

The relevant facts as revealed by the hearing of November 29, 1972 and the memoranda filed, are the following:

The investigation of the case was initiated when the defendant Carlos Rafael Maury Coll, a native and citizen of the Republic of Colombia, was encountered by Immigration officials as he attempted to depart from San Juan, to New York, on Eastern Airlines' Flight No. 928 at about 11:15 p.m., on May 17, 1972.

During a routine check of alien's passports boarding said flight, the defendant produced his Colombian passport with a United States' one entry B–2 visa. However, there was no Form I–94, Record of Arrival and Departure. The defendant was asked the whereabouts of Form I–94 which he produced after some delay from his pocket. It was noted at this time, that Form I–94 had been originally stapled in the passport but had been removed. Form I–94 showed that defendant had been admitted at San Juan, Puerto Rico on April 25, 1972, arriving from Aruba, Netherlands Antilles, and also showed that he had been admitted, in error until April 15, 1972.

The defendant was then accompanied to the Immigration office at the International Airport where the admitting officer was contacted by telephone. The admitting officer was able to state unequivocally that it was an error. The subject was admitted until May 15, 1972 and was so advised verbally at the time of his admission. At this time it was also noted that the defendant had no departure stamp in his passport from Columbia nor an admission stamp in his passport, admitting him to Aruba. Thereupon, the defendant was taken into custody by Immigration authorities as an alien illegally in the United States. He was then requested to produce additional identification and when he was apparently being very selective about which pocket he was producing the identification, he was directed to empty all his pockets on the desk. The defendant was questioned as to his luggage, to which he stated that he had none except for a small plastic bag which he was carrying in his hands.

When his jacket and shirt were checked by Immigration officials the following items were found:

1) One envelope containing $100.00 bills for a total of $10,000 U.S. Currency;

2) Four suitcases keys in a small envelope; and

3) Three Eastern Airlines luggage claim checks.

When questioned defendant admitted ownership of the money as indicated above but not so of keys or the luggage claim checks. Concerning these items, defendant stated he had never seen them before in his life and had no idea how these items got into his shirt pocket. After further questioning, defendant admitted the keys were his and were for suitcases that he had left in his room at the Hotel Borinquen. However, he still maintained that he had never seen the luggage claim checks before. When asked how much money he was carrying, he stated he had $8,000. The money was counted and proved to be $10,000. The

defendant then acted surprised but admitted the money was his. The envelope was placed in a United States Government envelope with the amount noted and returned to the defendant.

At this time, the Immigration officers requested from Eastern Airlines' officials to return the pieces of luggage corresponding to the number of claim checks in the possession of the defendant.

From the Airport, Immigration officers took the defendant to the Borinquen Hotel to pick up his personal effects and transfer him to jail.

Upon arrival at Room 834 of Hotel Borinquen, defendant was to gather all his personal effects and to produce the suitcases to which the keys found in his possession would fit. He was unable to do this as there were no other suitcases in his room other than the zipper bag in his possession. This zipper bag was checked out for further identification of the defendant and for offensive weapons and was found to contain various sundry papers.[1] At this time, the defendant was asked about the lack of departure stamp from Colombia and arrival stamp in Aruba in his passport. Defendant claimed he had sailed from Colombia to Aruba.

He was then asked if he had travelled as crew member or as stowaway on the ship. He did not reply to questions concerning his entry into Aruba.

After packing his clothes, the defendant asked if he could get a drink of water from the kitchen before leaving. The defendant was then transported to the Municipal jail. Upon arrival there, he did not have the $10,000 which had been previously returned to him. He was then asked what he had done with the money and he stated it had never been returned to him. The officer and the defendant then returned to Room 834 in the Borinquen Hotel. There, a Colombian citizen visitor, with whom the defendant had been living, stated he had not seen the money. The United States envelope in which the money had been returned to the defendant was found torn in small pieces in the living room waste basket. When defendant's roommate was confronted with this, he immediately produced the money. The money was again counted and returned to the defendant and the defendant was then taken to the Municipal jail where he was admitted around 3:00 a.m., May 18, 1972.

At 10:00 a.m., May 18, 1972, an order to show cause charging defendant with being in the United States in violation of Section 241(a)(2) of the Immigration and Nationality Act, was served on the defendant. Subsequent to that he was permitted to speak and confer with the Colombian Consul. Additionally, defendant was permitted to contact counsel, before being taken to the Immigration and Naturalization Service office at the Pan American Building, Hato Rey, Puerto Rico.

At approximately 4:00 p.m., May 18, 1972, the luggage that had been called back arrived at San Juan.

Due to the defendant's persistence in the denial as to any knowledge of the claim checks, upon the luggage arrival the customs officers proceeded to inspect it, in an effort to establish ownership of said luggage. One hundred three pounds (103) of marihuana were found to be its contents. It is to this search and prior arrest that defendant objects to.

After an analysis of the statutes and case law applicable to the facts at hand, the Court concludes and so holds that defendant's motion for suppression of evidence is without merit.

---

1. a. An Avianca's ticket from Aruba to San Juan to Barranquilla, Colombia, issued in the name of Maury Coll;

   b. An American Airlines' ticket from San Juan to New York validated May 10, 1972 used and issued to Maury Coll;

   c. A Pan American Airlines' ticket from San Juan to Kennedy New York to San Juan on May 10, 11 and 14.

 Title 8, United States Code, Section 1357,[2] in its provisions 1 and 2 authorize Immigration officials to, under circumstances as to the ones present, arrest and search an individual. The Supreme Court in Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), has recognized the right of Immigration officers to arrest and search aliens who were illegally in this country. Therefore, the only validity that defendant's claim might have, is that since the search of the luggage was after his arrest a warrant should have been obtained. This would be so if defendant had accepted the luggage as his. But in the instant case, defendant at all times denied ownership of said baggage. Therefore, the search was not of the type prohibited by the Fourth Amendment. It was not a search of a man's private books and papers for the purpose of obtaining information therein contained for using them as evidence against him, Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. It was not an arbitrary invasion against the privacy of individuals by government officials. Cámara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L. Ed.2d 930. It was a reasonable search destined to reveal the ownership of the luggage. The fact that the search uncovered evidence of a crime not contemplated by such search, if said search, as this one was, is valid at its inception, does not make it unlawful. Harris v. United States (10 Cir. 1945), 151 F.2d 837; Kelly v. United States (5 Cir. 1967), 197 F.2d 162.

In view of the foregoing, defendant's motion for suppression of evidence must be and is hereby denied, and the case is set for a pretrial for May 3, 1973 at 9:00 a.m., and for trial for May 9, 1973, at 9:30 a.m.

It is so ordered.

2. "(a) Any officer or employee of the Service authorized under regulations prescribed by the *Attorney General* shall have power without warrant

(1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States.

(2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, or expulsion of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States . . . "