**UNITED STATES of America**

v.

**Charles V. LABOVITZ.**

**No. 56–60.**

United States District Court
D. Massachusetts.

March 20, 1957.

Anthony Julian, U. S. Atty., Daniel Needham, Jr., Asst. U. S. Atty., Boston, Mass., for United States.

Hubert C. Thompson, Alfred Sigel, Boston, Mass., for defendant.

ALDRICH, District Judge.

This is a motion to return or suppress evidence. Following the opinion of December 27, 1956, D.C.D.Mass., 20 F.R.D. 3, the petitioners amended their complaint and the matter proceeded to trial. The amended complaint alleges, and I find, as follows: Waltham Horological Corporation, a Massachusetts corporation, hereinafter called Waltham, had and has legal title to the premises searched and the property seized. The petitioner Charles Labovitz, hereafter called Labovitz, and petitioner Doris Labovitz, together own all of the common stock of Waltham, and are, respectively, president and treasurer, and clerk thereof. Petitioner Abrams alleges he is an employee of Waltham, but this was not proved. In August, 1956 one Sullivan, a special agent of the Federal Bureau of Investigation, made application for a search warrant to the United States Commissioner for this District in which he recited, inter alia, that Waltham had, through Labovitz, in connection with a claim under a cost-plus contract with the Army Signal Corps, hereinafter called the contract, made consciously false statements of its direct labor costs for the purpose of recovering same from the United States, in violation of 18 U.S.C.A. § 1001, and that certain records, papers and documents, "used as the means of committing a criminal offense," were on Waltham's premises. The petitioners further alleged, and I find, that Labovitz and Abrams had been indicted in the Eastern District of Pennsylvania for bribery of a government employee in connection with the contract, and that the Assistant United States Attorney for the Massachusetts District in charge of the instant proceeding had asserted that it was a "cousin" to the bribery charge, in that the government was seeking to determine whether fraud, or attempted fraud, had also been committed.

The petitioners' motion is based on the following grounds: (a) that the articles seized were not used or intended to be used as a means of committing a criminal offense, nor otherwise subject to seizure under Rule 41(b), Fed.Rules Crim.Proc. 18 U.S.C.A.; (b) the purpose of the search violated the Fourth and Fifth Amendments; (c) the articles were the private property of the parties. Other possible grounds were mentioned in argument, but the complaint has already been once amended, and I decline to consider matters not pleaded.

I find that all items taken were the sole property of Waltham. It is true that under its by-laws Labovitz, in his capacity as treasurer, was the one charged with keeping at least some of them, but this did not mean that he had any

property rights therein which would give him, as apart from Waltham, any standing. Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771. Nor does the fact that he was a stockholder. Grant v. United States, 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423. This disposes of the matter of the Fifth Amendment, as a corporation is not a "person" entitled to the protection of the pertinent portion of this Amendment. Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S. Ct. 494, 90 L.Ed. 614; cf. United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542.

■ The question of whether the various papers seized constituted "means of committing a criminal offense," F.R.Cr. P. 41(b), requires a further recitation of probable cause, reasonably appearing to the Commissioner. Prior to May, 1955 Waltham's then accountant, one Seavey, prepared worksheets and Actual Cost Cards, so-called, hereinafter called Seavey's papers, showing the costs allocatable on Waltham's records to this contract. In June, 1955 Waltham employed a certified public accountant, hereafter called Louis. Louis, on Labovitz's instructions, examined Seavey's papers, and Waltham's regular cost cards, payroll records, payroll sheets and employees' time cards. The purpose was to manufacture and support fictitious costs to be claimed under the contract. Such costs, substantially in excess of what Seavey showed, were then backed up by fictitious time cards prepared by Labovitz and Louis to fit the framework of the pre-existing records, other than Seavey's papers. Such excessive and erroneous costs were thereafter submitted by Waltham to the government. The affidavits upon which the search warrant was issued recited substantially the above. This was sufficient.

■ I further find that each of the records, papers, etc., seized under the warrant constituted "means of committing a criminal offense." The fact that some of them were legitimate records and were not per se harmful or dangerous does not prevent such a finding. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231; United States v. Poller, 2 Cir., 43 F.2d 911, 74 A.L.R. 1382. Nor does the fact that some were not exhibited to the government. Instrumentalities do not lose their character by virtue of the fact that they aided only during a preliminary stage. United States v. Best, D.C.D.Mass., 76 F.Supp. 857, affirmed 1 Cir., 184 F.2d 131, certiorari denied 340 U.S. 939, 71 S.Ct. 480, 95 L. Ed. 677. The inflated, fictitious records were used to commit the offense, i. e., to deceive the government auditors, and the true, or other records were likewise used directly, i. e., shown to the government. Both, in combination, were essential. Seavey's papers were used indirectly, but as a very important means, to so shape the fictitious, or manufactured, records that they would be consistent with the others. Under the contract the government had a right to inspect and audit Waltham's books and records. No inflated claim could have been advanced unless records had been produced to substantiate it, and such could not have been prepared unless they dovetailed with those pre-existing. This in turn could not have been effected without careful examination and use by Louis, not only of such records, but also of Seavey's products, or others which would have had to have been prepared to take their place, as a master guide. I do not reach the point whether removing something which, if left, would betray the crime, of itself makes the removed object part of the means of committing the offense. Cf. United States v. Poller, supra.

■ I will deal briefly with whether it was proper to seize Seavey's "Actual Cost Cards" solely by virtue of a general description in the warrant, "other books, records, papers and memoranda pertaining to the operation of the company." Under all the circumstances, particularly having in mind that the government had

previously asked for these papers, but was informed by Labovitz that they had been destroyed, I would not hold it unreasonable to seize them under this general description when they were discovered. See United States v. Snow, D.C.D.Mass., 9 F.2d 978. I do not need to decide the standing of the petitioners to assert that this seizure was excessive. Lovette v. United States, 5 Cir., 230 F.2d 263; Lagow v. United States, 2 Cir., 159 F.2d 245, certiorari denied 331 U.S. 858, 67 S.Ct. 1750, 91 L.Ed. 1865; cf. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319.

The motion is denied in both aspects.